THE SQUARE LUMBER CO. v. GOLDMAN ET AL.

*Mortgages—Lien from day of filing—Section 8321-1, General Code—Applies only to bona fide mortgage having priority over mechanics' liens—Mortgagor assigning fictitious third mortgage to materialman estopped from denying validity —Materialman's lien not defeated, but other materialmen's liens prior thereto.*

1. It is only *bona fide* mortgages which, under the statute (Section 8321-1, General Code), shall be a "lien" from day of filing thereof so as to take precedence over lien for materials furnished thereafter.
2. Where mortgagor on land procured assignment of third mortgage, which was fictitious, to materialman before delivery of materials, mortgagor was thereafter estopped from denying its validity where materialman, relying thereon, took the mortgage as security instead of insisting on his statutory rights to file a materialman's lien.
3. Where owner of property executed fictitious third mortgage thereon, lien for materials furnished on property had right of priority over mortgage prior to time third mortgage was assigned to materialman who took it as security instead of relying on statutory right to file lien for materials furnished.

(Decided November 15, 1926.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. M. S. Farmer, Jr.,* for plaintiff in error.
*Mr. R. R. Snow,* for defendants in error.

VICKERY, J. This cause comes into this court on a petition in error to the municipal court of the city of Cleveland. In the court below the Square Lumber Company was the assignee of a third mortgage upon the real estate described in the petition,

and brought an action to foreclose a mortgage, and made other lienholders parties to that proceeding. On that trial of the action, the court seemed to have found against the Square Lumber Company's claim entirely, but more of that hereafter.

It seems that Jack and Anna Slavin, being the owners of a parcel of land described in the petition, which apparently was vacant property, were desirous of erecting a building thereon, and for that purpose procured what purported to be a construction loan of the Equity Savings & Loan Company for $7,000, and at the same time they gave a mortgage of $1,050 to Jacob Goldman and Libbie C. Hurwitz, which was a second mortgage, and a mortgage to Milton Golden in the sum of $1,000, which was a third mortgage. These mortgages were placed upon record in the order in which they are named, and were filed of record one minute apart, all of them before any work of any kind or description was done upon the land.

Thereafter, the owners of the property desired to obtain material from the Square Lumber Company. They went to the lumber company, and before it entered into any contractual relation, it investigated the title and found these three mortgages. Whereupon it refused to deliver material for the erection of any buildings upon the property. Then it appeared that this third mortgage to Golden was to all intents and purposes a fake mortgage; that there was no consideration therefor, and that, at best, Golden only promised to furnish certain money, which he never gave, and the mortgage at that stage of the game was without consideration. The mortgagors told all this state of

things to the Square Lumber Company, and said
they could procure an assignment of the latter
mortgage to the Square Lumber Company. That
mortgage was then assigned by Golden to the
Square Lumber Company, and that assignment was
duly recorded.

Before this event took place, however, other lien-
holders, who were parties to these proceedings, had
furnished material and labor for the construction
of this dwelling, if it were a dwelling, and the issue
was as between these lienholders and this mortgage
thus assigned to the Square Lumber Company.

It was claimed by the lienholders that inasmuch
as this mortgage was without consideration and un-
enforceable as against the makers thereof by the
mortgagee, and such being the state of the record
at the time they furnished material and labor upon
this property, their liens antedate the mortgage
lien of the Square Lumber Company.

I should say, in passing, that the Square Lumber
Company furnished about $1,500 worth of lumber
that went into the construction of the building, but
did not take a lien, and relied entirely upon the
assignment of this mortgage.

Then we have this state of facts. The owners of
real estate who were to erect a building, besides
getting the construction loan from the building
and loan company, put two other mortgages upon
the property, one of which I believe is not attacked
and so far as this record shows may be a *bona fide*
mortgage; but the third mortgage, upon which the
lumber company plants its claim, was admittedly
put on there without consideration. One would
not have to have a brilliant imagination to know

why this was done, and that would appear to be for the purpose of defeating any mechanics' liens, because it is argued that inasmuch as this mortgage was filed of record it became a lien from the day of its filing, which was before any material was furnished. Of course, that is the statute literally; however, we understand the statute (Section 8321-1, General Code) to have meant a valid *bona fide* mortgage based upon a consideration. It surely does not mean that a person can cover up by a phony mortgage his property, get a building erected at the expense of materialmen and laborers, and then have them defeated by this phony mortgage holder making a claim which antedates the furnishing of the material for which the lien was obtained. When the statute says "shall be a lien," it means a valid subsisting *bona fide* mortgage. It does not mean something that no one can enforce, and if there had not been any liens in this suit, and there had not been any transfer of this mortgage to the Square Lumber Company, Golden never could have foreclosed this mortgage against the mortgagors. There would be a complete want of consideration. That would have been the position that Golden would have been in.

Now, does the Square Lumber Company stand in any better position? We think perhaps it may. That is, if this was a mortgage duly drawn, properly signed, and transferred to the Square Lumber Company, who furnished material on the strength of the mortgage for the erection of this house, we think the owner under the state of the record in this case would be estopped from denying it was a valid subsisting claim upon this property, especially

as in the instant case the lumber company took this as security and relied upon it rather than upon the statutory rights of filing a lien. Assuming that to be true, and assuming that the court was wrong in finding that this was no claim against the owners whatever, yet can it be said that by a mortgage made good for the first time long after the rights of intervening materialmen had become fixed—can it be said that by this sort of dealing—the materialmen can be deprived of their just and lawful right to get payment for the material that they had actually put into this property? We think not. If this transfer had been made to the Square Lumber Company prior to the beginning of the furnishing of any material or any work upon this property, then there might be another question, but the record in this case stands uncontradicted that before the Square Lumber Company had revivified and made this mortgage a valid claim by furnishing material these other people had furnished materials, in the construction of this house. For all that appears, when they were asked to furnish material and labor in the construction of this house, they, too, may have questioned the financial responsibility of the makers of these mortgages, because of this third mortgage, and they may have been informed that this third mortgage did not amount to anything because as a matter of fact there was no consideration paid for it, and if Golden had held this mortgage there would be no question that that would not have been a good defense, so far as the postponing of his claim to them might be concerned.

During the interval that this mortgage was with-

out consideration, the material that was furnished upon this property would have priority of right, and we think the municipal court was right in holding these liens for material and labor furnished on this property prior to the mortgage held by the Square Lumber Company. We think, however, the court was wrong in holding that the Square Lumber Company had no claim against the owners of this property, and the judgment will be modified to conform to this opinion.

*Judgment affirmed as modified.*

LEVINE, P. J., and SULLIVAN, J., concur.